## II. FINANCIAL DATA AND CONFLICT OF INTEREST (PUBLIC)

1.    List sources, amounts and dates of all anticipated receipts from deferred income arrangements, stock, options, uncompleted contracts and other future benefits which you expect to derive from previous business relationships, professional services, firm memberships, former employers, clients, or customers. Please describe the arrangements you have made to be compensated in the future for any financial or business interest.

Not applicable.

2.    Explain how you will resolve any potential conflict of interest, including the procedure you will follow in determining these areas of concern. Identify the categories of litigation and financial arrangements that are likely to present potential conflicts-of-interest during your initial service in the position to which you have been nominated.

During the first 15 years of my judicial career, I handled mostly criminal appeals and was therefore not often faced with a possible conflict of interest. On the Supreme Court, it was been my practice to avoid sitting on any case in which I might have a financial interest in the outcome. So far, I have not run into any problem, although I did sit inadvertently on a case reported as Mapco Petroleum, Inc. v. Memphis Barge, Inc., 849 S.W.2d 312 (Tenn. 1993), without realizing that I own 150 shares of Mapco stock and earned $150.00 in dividend income from that ownership in 1992.  .

My husband and I are not wealthy, but we have discussed putting what investments we have in a blind trust or in the hands of a money manager, or converting them to mutual funds.

Beyond these matters, the only conflict I anticipate may arise from the fact that my daughter will graduate from law school in 1994 and may begin practicing with a firm handling litigation before the federal courts. I would, of course, recuse myself in such cases.

3.    Do you have any plans, commitments, or agreements to pursue outside employment, with or without compensation, during your service with the court? If so, explain.

No, except for occasional continuing-education teaching assignments.

4.    List sources and amounts of all income received during the calendar year preceding your nomination and for the current calendar year, including all salaries, fees, dividends, interest, gifts, rents, royalties, patents, honoraria, and other items exceeding $500 or more (If you prefer to do so, copies of the financial disclosure report, required by the Ethics in Government Act of 1978, may be substituted here.)

In 1992, I received $89,889 in salary from the State of Tennessee. Jointly, my husband and I received $3,719 in taxable interest, $3,630 in non-taxable interest, and $8,167 in dividend income, as follows:

Taxable Interest
| | |
|---|---|
| First American National Bank | $695 |
| NationsBank of Tennessee | 26 |
| Newspaper and Printers Credit Union | 118 |

Digitized by Google

| | |
|---|---:|
| Tennessee Workers Credit Union | 1,194 |
| Union Planters National Bank | 121 |
| Pershing Division (Wiley Bros.) | 221 |
| Dean Witter Realty Yield Plus, L.P. | 1,344 |

Dividend Income

| | |
|---|---:|
| Alliance Capital Resources | $1,785 |
| Liquid Green | 426 |
| Kemper Growth Fund | 40 |
| Merrill Lynch | 505 |
| Wiley Bros | 1,657 |
| Pershing Division (Wiley Bros) | 3,774 |
| Allstate Municipal | 35 |
| Capital gains income | 55 |

I do not have a break–down on non-taxable interest in my personal files, but I can obtain it from my accountant, if necessary. In 1993, I have received $54,799.00 in salary as of August 1. I would be glad to submit copies of our various account statements, so that the committee will have a clear picture of the sources of our outside income.

5.      Please complete the attached financial net worth statement in detail (Add schedules as called for).

See attached statement, with schedules.

6.      Have you ever held a position or played a role in a political campaign? If so, please identify the particulars of the campaign, including the candidate, dates of the campaign, your title and responsibilities.

Before appointment to the bench in 1975, I worked in several local and state political campaigns, but only in a minor capacity. In January 1990, I was nominated to the position I now hold on the Tennessee Supreme Court by the Democratic State Executive Committee. I "campaigned" with members of the State Executive Committee during the fall of 1989. Following our nomination on January 19, 1990, the Democratic slate for the Supreme Court campaigned for several months prior to our election on August 2, 1990. As it turned out, we had no opposition, and we converted the campaign schedule into a "listening and learning tour" of the court system in Tennessee. We were able to visit with attorneys, courthouse personnel, and interested voters in over 60 of Tennessee's 95 county seats.

Digitized by Google

**Personal Financial Statement** Larry G. & Martha Craig Daughtrey

**Important: Read these directions before completing this Statement.**
Check appropriate box.

| | Bank Use Only |
|---|---|
| Account Number | _____ |

☐ If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete only Section A and C.

☐ If you are applying for individual credit, but are relying on income from alimony, child support, or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested, complete all Sections, providing information in Section B about the person upon whose alimony, support, or maintenance payments or income or assets you are relying

☐ If you are applying for joint credit with another person, complete all Sections providing information in Section B about the joint applicant.

☐ If this statement relates to your individual guaranty of the indebtedness of other person(s), firm(s) or corporation(s), complete Section A and C.

☐ If this statement relates to a joint guaranty with another person or if you are relying on the income or assets of another person to support the guaranty, complete all Sections providing information in Section B about the person upon whose income or assets you are relying.

To: NationsBank of Tennessee, N.A.     Purpose of Loan: _____

| Section A — Individual Information (Type or Print) | Section B — Other Person Information (Type or Print) |
|---|---|
| Name  Martha Craig Daughtrey | Name  Larry G. Daughtrey |
| Residence Address  680 Timber Lane | Residence Address  680 Timber Lane |
| City, State & Zip  Nashville, TN  37215 | City, State & Zip  Nashville, TN  37215 |
| Position or Occupation  Justice | Position or Occupation  Journalist |
| Business Name  Tennessee Supreme Court | Business Name  The Tennessean |
| Business Address  401 7th Ave., North, Room 321 | Business Address  1100 Broadway |
| City, State & Zip  Nashville, TN  37219 | City, State & Zip  Nashville, TN  37203 |
| Res Phone (615)297-6407  Bus Phone (615)741-2119 | Res Phone (615)297-6407  Bus Phone (615)255-6278 |

**Section C — Statement of Financial Condition as of** May 7, 19 93

NOTE: Please check Box A if an asset or liability listed below is held by you individually. Check Box B if an asset or liability listed below is held by the other person named in Section B above. Check both Box A and B if an asset or liability is held by you jointly with another person.

| A | B | ASSETS (Do not include Assets of doubtful value) | In Dollars (Omit cents) | A | B | LIABILITIES | In Dollars (Omit cents) |
|---|---|---|---|---|---|---|---|
| x | | Cash on hand and in banks – See Schedule F | 140,474 | | | Notes Payable to Banks – Secured – See Schedule F | None |
| x | x | U.S. Gov't & Marketable Securities – See Schedule A | 241,271 | | | Notes Payable to Banks – Unsecured – See Schedule F | None |
| | | Non Marketable Securities – See Schedule B | None | | | Due to Brokers | None |
| | | Securities held by broker in margin accounts | None | | | Amounts Payable to others – Secured | None |
| | | Restricted or control stocks | None | | | Amounts Payable to others – Unsecured | None |
| | | Partial interest in Real Estate Equities – See Schedule C | None | | | Accounts and Bills Due | Current |
| x | x | Real Estate Owned – See Schedule D | 308,000 | | | Unpaid Income Tax | None |
| | | Loans Receivable | None | | | Other Unpaid Taxes and Interest | None |
| x | x | Automobiles and other Personal Property | 84,000 | x | x | Real Estate Mortgages Payable – See Schedule D | 110,500 |
| x | | Cash value life insurance – See Schedule E | 125,973 | | | Other Debts – Itemize | None |
| | | Other Assets – Itemize | | | x | Car Note (LGD) at | |
| x | x | IRA accounts | 47,997 | | | Newspaper Credit Union | 4,000 |
| | | | | | | **Total Liabilities** | 114,500 |
| | | | | | | **Net Worth** | 833,215 |
| | | **Total Assets** | 947,713 | | | **Total Liabilities and Net Worth** | 947,715 |

| Sources of Income for Year Ended  January 1, 19 93 | Personal Information |
|---|---|
| Salary  (both)  $ 130,149 | Do you have a Will?  yes   If so, name of executor. |
| Bonus and Commissions  $  None | MCD & LGD name each other executor |
| Real Estate Income  $  None | Are you a Partner or Officer in any other Venture? If so, describe. |
| Other Income (Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation)☒ | No |
| | Are you obligated to pay Alimony Child Support or Separate Maintenance Payments? If so, describe. |
| Dividends and Interest  15,516 | No |
| **Total**  $ 145,665 | Are any assets pledged other than as described on schedules? If so, describe. |
| **Contingent Liabilities** | |
| Do you have any contingent liabilities? If so, describe (include any unsatisfied judgements within 20 years). | Income tax settled through (date) 4/15/93 |
| See notes | Are you a Defendant in any Suits or Legal Actions? If so, describe. |
| As Endorser, Co-Maker or Guarantor?  $  see notes | |
| On Leases or Contracts?  $  None | No |
| Legal Claims  $  None | Have you ever been declared bankrupt in the last 14 years? If so, describe. |
| Other Special Debt  $  None | |
| Amount of Contested Income Tax Liens  $  None | No |

Digitized by Google

## Schedule A — U.S. Government & Marketable Securities

| Number of Shares or Face Value (Bonds) | Description | In Name Of | Are These Pledged? | Market Value |
|---|---|---|---|---|
| | See attachment and notes | | No | |
| | | | | |
| | | | | |
| | | | | 241,271 |

## Schedule B — Non-Marketable Securities

| Number of Shares | Description | In Name Of | Are These Pledged? | Source of Value | Value |
|---|---|---|---|---|---|
| | None | | | | |
| | | | | | |
| | | | | | |

## Schedule C — Partial Interests In Real Estate Equities

| Address & Type Of Property | Title In Name Of | % of Ownership | Date Acquired | Cost | Market Value | Monthly Payment | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| None | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## Schedule D — Real Estate Owned

| Address & Type of Property | Title In Name Of | Date Acquired | Cost | Market Value | Monthly Payment | Mortgage Amount |
|---|---|---|---|---|---|---|
| See attachment | | | | | | |
| | | | | 308,000 | 1,413 | 110,500 |

## Schedule E — Life Insurance Carried, including N.S.L.I. and Group Insurance

| Name Of Insurance Company | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| Annuities, MCD | | | | | 76,098 |
| See attachment | | | | | |
| TIAA/CREF Retirement Fund - see attachment | | | | | 49,875 |
| | | | | | 125,973 |

## Schedule F — Banking Relations (A list of all my Bank Accounts, including Savings and Loans)

| Name and Location of Bank | Cash Balance | Amount of Loan | Maturity of Loan | How Endorsed, Guaranteed or Secured |
|---|---|---|---|---|
| See Notes | | | | |
| | | | | |
| | 140,474 | | | |

The information contained in this statement is provided for the purpose of obtaining, or maintaining credit with you on behalf of the undersigned, or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others, execute a guaranty in your favor Each undersigned understands that you are relying on the information provided herein (including the designation made as to ownership of property) in deciding to grant or continue credit Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquiries you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit-worthiness You are authorized to answer questions about your credit experience with me/us.

Signature - Individual

Date Signed _____ _____ _____ 19. ___

Signature - Other Party

90-041    694

Digitized by Google

**Schedule A:**

> In husband's account at Merrill-Lynch
> 100 Swiss Chalet Inc.       400
> 150 Mapco Inc.       <u>7,687</u>
>            <u>8,087</u>

> Jointly owned:
> 130 shares Cheatham State Bank
> (not publicly traded). Purchase price
> $500 about 1975.

**Schedule D:**

1. 680 Timber Lane, Nashville, Tennessee 37215. Condominium purchased in 1988 for $124,000 and remodeled. Mortgage held by SouthTrust Mortgage Co., Birmingham, Alabama. Payments of $758 per month. Loan balance about $73,000. Estimated market value $140,000.

2. House and farm of approximately 80 acres, Route 1, Box 154, Lancaster, TN 38569. Purchased in 1977 (house) and 1980 (farm). Cost $92,500. Mortgage held by Cheatham State Bank, Kingston Springs, TN. Monthly payments $325. Loan balance approximately $4,500. Esti·nated market value $110,000.

3. Mobile home and lot at 5 Whippoorwill lane, Pawleys Island, S.C. 29585. Purchased 11/92 for $43,000 and added screen porch for $15,000 in spring of 1993. Mortgage held by NationsBank of Pawleys Island, S.C. 29585. Loan balance approximately $43,000. Monthly payments $330.00 Estimated market value $38,000.00

All are jointly owned by Martha Craig Daughtrey and Larry G. Daughtrey.

**Schedule E:**

Martha Craig Daughtrey and Larry G. Daughtrey carry term life insurance of $200,000 each, payable to the other. Not included on financial statement.

Not included are vested interests in retirement systems of State of Tennessee (MCD) and Gannett Co., Inc. (LGD)

Digitized by Google

Schedule F:

Cash assets are held in Tennessee State Employee's Credit Union, Newspaper Printers Credit Union and several brokerage house money market funds. Documentation on request.

Primary checking accounts are at First American Bank, Nashville. Account numbers and approximate balances as of 5/7/93:

| | | |
|---|---|---|
| Martha Craig Daughtrey | 7 239 533 | $12,000 |
| Larry G. Daughtrey | 7 19380 6 | 12,000 |

Contingent liabilities:

As of 5/7/93, our daughter has a contact for the purchase of a house at 5208 Nevada Avenue, Nashville, Tennessee, for $64,900. We have agreed to guarantee her loan until her graduation from Vanderbilt University Law School in May, 1994. She has accepted a job at that time which provides adequate income to service the mortgage. The loan will be arranged through a commercial lender at prevailing interest rates.

- 2 -

Digitized by Google